IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| COMBINED AIRCRAFT OWNERSHIP, LLC, | Civil Action No.: |
| Plaintiff, | |
| v. | |
| LEARJET INC. D/B/A BOMBARDIER AIRCRAFT SERVICES, | **JURY TRIAL DEMANDED** |
| Defendant. | |

## COMPLAINT

Plaintiff Combined Aircraft Ownership, LLC, by and through its undersigned counsel, files this Complaint against Defendant Learjet Inc. d/b/a Bombardier Aircraft Services, averring as follows:

## PARTIES

1. Plaintiff Combined Aircraft Ownership, LLC ("CAO") is a North Dakota limited liability company with its principal place of business located at 809 8th Avenue South, Fargo, North Dakota 58103. The sole member of CAO is an adult individual who is a citizen of North Dakota.

2. Defendant Learjet Inc. d/b/a Bombardier Aircraft Services ("Learjet" or "BAS") is a Kansas corporation with its principal place of business located at One Learjet Way, Wichita, Kansas 67209, is authorized to do business in North Dakota, and maintains aircraft maintenance and service operations at the Fargo Jet Center located at 3801 20th Street North, Fargo, North Dakota 58102. Learjet is a wholly owned subsidiary of Bombardier Inc. ("Bombardier"), a

1

Canadian transportation manufacturing corporation, with its principal place of business located at 400 Côte-Vertu Road West, Dorval, Quebec, Canada H4S 1Y9.

3. Bombardier is a behemoth corporation that has production and engineering sites in over 25 countries across the segments of aviation and transportation. Bombardier shares are traded on the Toronto Stock Exchange (BBD). Bombardier has a market capitalization of almost $1 billion, and, in the fiscal year ended December 31, 2021, posted revenues of $6.1 billion.

4. Learjet maintains a statutory agent in the State of North Dakota for service of process: CT Corporation System, 120 West Sweet Avenue, Bismarck, North Dakota 58504.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and because the amount in controversy exceeds $75,000.00, exclusive of interest and costs. The sole member of CAO is a citizen of the State of North Dakota, and Learjet is a citizen of the State of Kansas, insofar as it is a corporation organized and existing under the laws of the State of Kansas with its principal place of business in that State.

6. The Court has personal jurisdiction over Learjet because it transacts business within North Dakota, both specifically in relation to the facts giving rise to this action and during the general course of its business affairs at the Fargo Jet Center.

7. A substantial part of the events giving rise to CAO's claims occurred within the judicial district of the United States District Court for the District of North Dakota. Accordingly, venue is appropriate in this district pursuant to 28 U.S.C. § 1391(b)(2).

**FACTUAL BACKGROUND**

I. **CAO's purchase of the Aircraft and the assignment of manufacturer warranties.**

8. CAO is the registered owner of a Global Express fixed-wing multiengine aircraft manufactured by Bombardier, Model No. BD-700-1A10, Manufacturer Serial No. 9050, and bearing Federal Aviation Administration Registry No. N351LS (the "Aircraft").

9. Pursuant to an Aircraft Purchase Agreement made effective as of June 7, 2018, CAO purchased the Aircraft from AFMA Aviation, Limited for the price of $3,650,000.00.

10. Under the Aircraft Purchase Agreement, all warranties from the manufacturer and all service providers and suppliers with respect to the Aircraft remained in effect and were assigned and transferred to CAO.

II. **The parties' contractual relationship requiring BAS to supply parts and services for the Aircraft.**

11. On February 19, 2020, CAO and BAS executed Proposal No. TUS19/12/4-BD-700-9050-2838-10061 (rev. 3) (the "Inspection Proposal") pursuant to which BAS performed a 240-month inspection of the Aircraft and other restoration and mechanical work for a lump sum fee of $612,192.00.

12. On February 25, 2020, CAO and BAS executed a second Proposal No. HAR19/5/14-BD-700-9050-796-10100 (rev. 6) (the "Interior Proposal") pursuant to which BAS completed a refurbishment of the interior of the Aircraft and other inspection and restoration work for a lump sum fee of $1,147,642.00.

13. BAS chose to contract with CAO to provide parts and services required to keep the Aircraft airworthy.

14. CAO tendered a down payment in the amount requested by BAS of $647,077.50 for the approved work to be performed under the Inspection and Interior Proposals.

15. During the course of the project, CAO approved extra work items requested by BAS in the amount of $535,491.00.

16. On July 29, 2020, BAS issued a purported final invoice to CAO under the Inspection Order in the amount of $1,949,092.24.

17. On July 29, 2020, BAS also issued a purported final invoice to CAO under the Interior Proposal in the amount of $879,954.97.

18. The invoices for the Inspection Order and Interior Proposal, after taking into account the amounts stated in the Inspection Proposal and Proposal, and accounting for a $647,077.50 down payment and extras in the amount of $535,491.00, sought $533,722.21 above and beyond any charges agreed to by BAS and CAO.

19. BAS refused to release the Aircraft to CAO absent full payment of the disputed final invoices.

20. CAO proposed to pay the charges agreed upon by CAO and BAS in the amount of $1,648,247.50, and to deposit into an escrow account of BAS' reasonable choosing the amount in dispute to effectuate the release and return of the Aircraft to CAO.

21. CAO ultimately paid almost $2,295,325.00 to BAS in connection with the work performed under the Inspection and Interior Proposals.

### III.     The Arizona Action.

22. The final invoices issued by BAS to CAO under the Inspection and Interior Proposals contained instances of BAS: (a) overcharging CAO for approved work items; (b) charging CAO for unapproved work items; and (c) charging CAO for work items that were never performed. CAO disputed these charges reflected in the invoices.

23.     On July 28 and 29, 2020, CAO proposed to pay the charges agreed upon by CAO and BAS in the amount of $1,648,247.50 (representing the total fees under the Inspection and Interior Proposals, plus approved extras in the amount of $535,491.00, less the deposit payment of $647,077.50), and to deposit into an escrow account of BAS' reasonable choosing the amount in dispute between the parties in order to effectuate the release and return of the Aircraft to CAO.

24.     BAS rejected CAO's proposal and demanded full payment of its inflated and unapproved invoices prior to a release and return of the Aircraft.

25.     This led to a federal lawsuit in the United States District Court for the District of Arizona, captioned as *Combined Aircraft Ownership, LLC, v. Learjet Inc. d/b/a/ Bombardier Aircraft Services,* Civil Action No. 4:20-cv-00330 (the "Arizona Action").

26.     As a result of the Arizona Action, BAS was ordered to release the Aircraft to CAO.

**IV.     The Aircraft engine replacement.**

27.     In May 2020, CAO engaged a third-party maintenance contractor to remove the left-hand side engine (Serial No. 12206) from the Aircraft for repair.

28.     The engine was transported to and from a Rolls-Royce Canada Ltd. facility in Montreal, Quebec, Canada, for repair and reinstallation onto the Aircraft for a fee of $4,291,337.04.

**V.     CAO's investment in the Aircraft.**

29.     As of 2020, CAO invested over $10,000,000.00 in connection with its purchase of the Aircraft, and inspection, restoration, and engine refurbishment work.

**VI.     Bombardier controls most of the Global Express replacement parts market.**

30.     The aircraft industry denotes replacement parts branded by the manufacturer as original equipment manufacturer ("OEM") parts, in contrast with substitute parts, which are

referred to as parts manufacturing approval ("PMA") parts because they require regulatory certification by the Federal Aviation Administration ("FAA").

31. The majority of all Global Express parts on the market are OEM parts because: (a) BAS controls most of the replacement parts market due to the proprietary nature of the design of the Global Express aircraft; and (b) PMAs generally consist of non-essential parts and are rarely available for the most important, and expensive, components of the aircraft.

32. While CAO is able to purchase some aftermarket PMAs from third-party service centers, these centers generally do not stock most items for the Aircraft and they need to obtain the necessary parts for repair and replacement by submitting orders for parts on an as-needed basis through spot contracts with BAS.

## VII. BAS' retaliatory conduct and unlawful refusal to supply parts or services to CAO.

33. CAO is in need of a continuing, steady source of replacement parts in order to maintain the airworthiness of the Aircraft and keep it from being grounded and unusable.

34. Since the release of the Aircraft and the conclusion of the Arizona Action, BAS has without justification failed and refused to continue supplying CAO with the essential parts necessary to maintain the Aircraft's airworthiness, which will result in the grounding of the Aircraft upon the need for essential replacement parts.

35. BAS has unjustifiably refused to continue supplying an indispensable input to CAO, which constitutes an almost total disruption of the previous levels of supply provided by BAS to CAO.

36. BAS' repeated refusals to continue supplying CAO with essential parts culminated in an email from BAS to CAO, dated September 13, 2022, in which it stated:

There is no next step. The account restriction is for Mr. Swanson [the sole member of CAO] and any of his associates involved with the aircraft. If he sold the aircraft to an unrelated 3rd party and was no longer involved with the aircraft, Bombardier could reconsider providing parts and service support.

37. CAO is able to purchase a limited amount of PMAs from third-party service centers, however, they generally do not stock many essential parts for the Aircraft which need to be ordered and purchased from BAS.

38. CAO entered into contracts and business relationships with third-party suppliers in an effort to obtain essential Global Express parts. However, BAS also refuses to sell the necessary replacement parts to these third parties upon learning that they are seeking components for the Aircraft.

39. CAO even offered to pay BAS cash upfront for the purchase of replacement parts for the Aircraft. BAS summarily rejected this reasonable commercial proposal.

40. As a result of BAS' misconduct, CAO has lost the use of the Aircraft because CAO is unable to fly the Aircraft to Europe based upon the fact that it would be red-flagged and grounded upon an inability to procure vital parts and components from BAS.

41. As a result of BAS' misconduct, CAO will be unable to further use the Aircraft since it has no alternative supplier of the essential parts necessary to ensure that the Aircraft remains airworthy.

## COUNT I
## BREACH OF CONTRACT/ANTICIPATORY
## BREACH OF CONTRACT (N.D.C.C. §§ 9-01-05, 9-01-16, 9-06-01 & 41-01-18)

42. The averments of paragraphs 1 through 41 are incorporated by reference as if fully set forth herein.

43. As a result of its monopoly over the market, and the parties' prior course of performance, a contractual arrangement exists between the parties under which BAS is obligated

to furnish CAO with all replacement parts necessary to repair the Aircraft, which are unavailable from any other source in the market, to ensure that it remains airworthy.

44. The implied covenant of good faith and fair dealing exists in every contract and requires that none of the parties to the contract do anything which will injure the right of another party to receive the benefit of the contract.

45. BAS was and continues to be the only company in control of most of the essential replacement parts needed for the repair and maintenance of the Aircraft.

46. BAS' vindictive refusal to provide parts or services to CAO for the Aircraft has and will continue to render it grounded and unusable.

47. BAS has materially breached its continuing contractual obligations and duty of good faith and fair dealing by refusing to supply CAO with the essential replacement parts and services necessary for the repair and maintenance of the Aircraft to ensure that it at all times remains airworthy.

48. BAS also has positively and unequivocally notified CAO that it will not render its promised performance under the parties' contractual arrangement.

49. All conditions precedent to BAS' contractual performance have occurred.

50. As a direct and proximate cause of BAS' material and anticipatory breaches of contract, CAO has sustained and will continue to sustain damages well in excess of $75,000.00.

## COUNT II
## BREACH OF WARRANTY (N.D.C.C. § 9-11-01)

51. The averments of paragraphs 1 through 50 are incorporated by reference as if fully set forth herein.

52. Under the Aircraft Purchase Agreement, all warranties from BAS with respect to the Aircraft remain in effect and were assigned and transferred to CAO.

53. BAS materially breached these express warranties by unlawfully refusing to furnish CAO with the essential replacement parts and services necessary for the repair and maintenance of the Aircraft to ensure that it at all times remains airworthy.

54. As a direct and proximate cause of BAS' breaches of express warranty, CAO has sustained and will continue to sustain damages well in excess of $75,000.00.

### COUNT III
### PROMISSORY/EQUITABLE ESTOPPEL (N.D.C.C. § 31-11-06), IN THE ALTERNATIVE

55. The averments of paragraphs 1 through 54 are incorporated by reference as if fully set forth herein.

56. Based upon its prior course of conduct, BAS intentionally and deliberately led CAO to believe that BAS would at all times furnish CAO with the essential replacement parts and services necessary for the repair and maintenance of the Aircraft to ensure that it at all times remains airworthy.

57. Through its conduct and statements, BAS falsely represented that it would at all times furnish CAO with the essential replacement parts and services necessary for the repair and maintenance of the Aircraft.

58. BAS intended or at least should have expected CAO to rely upon its conduct.

59. BAS knew, both actually and constructively, the real fact that it would unlawfully refuse to furnish CAO with the essential replacement parts and services necessary for the repair and maintenance of the Aircraft to ensure that it at all times remains airworthy.

60. CAO lacked knowledge that BAS would refuse to supply it with the essential replacement parts.

61. CAO in good faith relied upon BAS' conduct and statements concerning its continuing provision of essential replacement parts and services necessary for the repair and maintenance of the Aircraft.

62. CAO has lost the use of the Aircraft. CAO has been unable to fly the Aircraft to Europe, and will be further unable to use the Aircraft to its injury, detriment, and prejudice.

63. BAS is equitably estopped from denying the existence of its contractual and other duties to supply CAO with the essential replacement parts and services necessary to ensure that the Aircraft remains airworthy.

64. As a direct and proximate cause of BAS' misconduct CAO has and will continue to sustain damages well in excess of $75,000.00.

## COUNT IV
### WILLFUL VIOLATIONS OF THE
### NORTH DAKOTA CONSUMER FRAUD ACT (N.D.C.C. §§ 51-15-02 & 51-15-09)

65. The averments of paragraphs 1 through 64 are incorporated by reference as if fully set forth herein.

66. As averred herein, BAS has violated the North Dakota Consumer Fraud Act, N.D.C.C. § 51-15-01, *et seq*. (the "Act").

67. The Act makes it unlawful for any corporation to engage in any deceptive acts or practices, fraud, false pretenses, false promises, or misrepresentations in connection with the sale of any goods or services. N.D.C.C. § 51-15-02.

68. The Act further makes it unlawful for a corporation to engage in any act or practice in connection with the sale of goods or services which is unconscionable or which causes or is likely to cause substantial injury to a limited liability company which is not reasonably avoided by

the injured limited liability company and not outweighed by countervailing benefits to consumers or to competition. *Id*.

69. A private cause of action under the Act for treble damages, costs, disbursements, and actual reasonable attorneys' fees is available where the defendant knowingly engaged in any act or practice declared unlawful by N.D.C.C. § 51-15-02. N.D.C.C. § 51-15-09.

70. In connection with its course of selling goods and services to CAO, BAS knowingly falsely promised CAO that BAS would at all times furnish CAO with the essential replacement parts and services necessary for the repair and maintenance of the Aircraft to ensure that it at all times remains airworthy, and it intended that CAO rely upon its promises.

71. As averred herein, BAS has violated the Act by knowingly and unlawfully refusing to continue furnishing CAO with the essential replacement parts and services necessary for the repair and maintenance of the Aircraft.

72. BAS' misconduct is unconscionable and has caused and will continue to cause substantial injury to CAO which is not reasonably avoidable by CAO because the requisite parts are not available from any other source, and BAS' misconduct is not outweighed by any countervailing benefits to consumers or to competition.

73. As a direct and proximate cause of BAS' misconduct, CAO has sustained and will continue to sustain damages well in excess of $75,000.00.

**COUNT V**
**TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS**

74. The averments of paragraphs 1 through 73 are incorporated by reference as if fully set forth herein.

75. CAO has entered into business relationships with third-party suppliers in an effort to obtain the essential replacement parts for the Aircraft that BAS unlawfully refuses to furnish directly to CAO.

76. BAS has knowledge of these business relationships by virtue of its refusal to sell essential replacement parts for the Aircraft to third-party suppliers immediately upon learning that they are seeking components for the Aircraft.

77. CAO regularly conducts business with a number of companies in the plane maintenance industry and contracts with these companies to provide maintenance services to CAO's planes, including the Aircraft at issue in this Complaint.

78. BAS has deliberately interfered with the business relationships between CAO and the third-party suppliers by refusing to sell essential replacement parts to any company doing business with CAO.

79. As a result of this tortious interference, CAO has not been able to procure essential replacement parts for the Aircraft, and it will be grounded and rendered unusable.

80. As a direct and proximate cause of BAS' tortious conduct, CAO has sustained and will continue to sustain damages well in excess of $75,000.00.

**PRAYER FOR RELIEF**

WHEREFORE, CAO respectfully requests that that Court enter an Order:

a. Entering judgment in favor of CAO and against Learjet based upon the unlawful conduct averred herein;

b. Awarding CAO actual, compensatory, incidental, and/or consequential damages in excess of $75,000.00, in an amount to be determined at trial, trebled;

c. Awarding CAO its loss of use damages pursuant to N.D.C.C. § 32-03-09.1 in an amount to be determined at trial, trebled;

d. Ordering BAS to specifically perform its contractual and other duties owed to CAO;

    e.  Awarding CAO its costs, disbursements, and actual reasonable attorneys' fees incurred in this action;

    f.  Awarding CAO pre-judgment and post-judgment interest on all amounts awarded; and

    g.  Granting CAO all such other legal and equitable relief that the Court deems necessary and proper.

## JURY TRIAL DEMAND

Pursuant to Fed.R.Civ.P. 38(b), CAO demands a trial by jury on all claims so triable.

Respectfully submitted,

By: */s/ Ryan James*
Ryan James
Pa. I.D. #82799
*Admitted to the United States District Court for the District of North Dakota*

J. Andrew Salemme
Pa. I.D. #208257
*Admitted to the United States District Court for the District of North Dakota*

Tucker Arensberg, P.C.
1500 One PPG Place
Pittsburgh, PA 15222
(412) 566-1212
rjames@tuckerlaw.com
asalemme@tuckerlaw.com

Randolph E. Stefanson
N.D. I.D. #02643

Steven K. Aakre
N.D. I.D. #03780

403 Center Avenue, Suite 302
Moorhead, MN 56560
(218) 236-1925
rs@stefansonlaw.com
saakre@stefansonlaw.com

ATTORNEYS FOR PLAINTIFF